[Civ. No. 25496. Fourth Dist., Div. Two. Aug. 11, 1981.]

MINA LYLE, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
CITY OF RANCHO CUCAMONGA et al., Real Parties in Interest.

**COUNSEL**

Herbert Hafif, Stephen L. Odgers and Gary Cripe for Petitioner.

No appearance for Respondent.

Thompson & Colegate and Jim D. Bishop for Real Parties in Interest.

**OPINION**

**McDANIEL, J.**—We issued an alternative writ of mandate in these original proceedings to test the validity of the trial court's order disqualifying the law firm of Herbert Hafif from serving as trial counsel for petitioner, Mina Lyle, in her personal injury action against real parties in interest, City of Rancho Cucamonga, County of San Bernardino, and two construction companies. The challenged order provided, in the alternative, that the law firm of Herbert Hafif (law firm) could continue to represent plaintiff on condition that two members of the law firm, scheduled as witnesses, not testify on behalf of plaintiff at the jury trial. The broad question that we must decide is whether the trial court abused its discretion in issuing its order of February 11, 1981.

In the trial court the following factual sequence appeared.

The underlying action was brought because of injuries sustained by plaintiff when the automobile she was driving ran off the edge of a public street in the City of Rancho Cucamonga. The mishap occurred at night, allegedly as a result of the street's collapsing from underneath plaintiff's car.[1]

Plaintiff has been employed as a legal secretary in the Claremont office of the law firm for approximately 19 years. The law firm, for

---

[1]Two construction companies were also named as defendants because plaintiff alleged that at the time of the accident the construction companies were "in the process of widening the street and changing the characteristics of this public right-of-way."

reasons sufficient to its members, undertook to represent plaintiff free of charge.

At a conference the day before the trial was to begin the trial court was informed by plaintiff that two of the law firm's attorneys were to be called as witnesses on behalf of plaintiff. The trial court, on its own initiative, questioned the propriety of this procedure and suggested that defense counsel research the matter and make a motion to disqualify the law firm should such a motion appear to have supporting authority.

The next day in open court, the date set for trial, the motion to disqualify was made by defense attorneys. The plaintiff, in opposition to the motion, submitted: (1) a transcript of the plaintiff's deposition; (2) two sets of answers by plaintiff given in response to interrogatories propounded by the city and by the county; and (3) her own declaration.[2] Defendants did not submit any papers in support of their motion.

Plaintiff's declaration read: "I am Mina Lyle. I am the plaintiff in the lawsuit herein.

"I have been fully advised regarding the possible implications of the dual role of my lawyers, that is, that some members of the Law Firm who represent me shall also testify in my behalf, and that this may affect the outcome of my case.

"I have had a reasonable opportunity to seek the advice of independent counsel on this matter.

"I consent to and want the Law Offices of Herbert Hafif to represent me in this lawsuit. Since the Law Offices of Herbert Hafif is not charging to represent me, I will be prejudiced by being forced to seek other counsel who will charge me.

"I declare under penalty of perjury that the foregoing is true and correct."

---

[2]The deposition transcript and the two sets of answers were submitted by plaintiff to support her argument that through the discovery proceedings, defendants were made aware that her attorneys might be called as witnesses and thus, the motion to disqualify made immediately before trial was untimely, pursuant to *White* v. *Superior Court* (1979) 98 Cal.App.3d 51 [159 Cal.Rptr. 278]. The trial court, apparently believing defense counsel's assertions that the foregoing discovery materials gave no indication that the attorneys would be called as witnesses, determined that the motion was timely made. The trial court also determined that defendants' motion was not made to gain any tactical advantage. Because plaintiff does not raise this issue in her petition, we need not address the timeliness of defendants' motion to disqualify.

The following factors were brought to the attention of the trial court before the order disqualifying law firm was made.

At trial, plaintiff was to be represented by Eileen Moore, who works in the Newport Beach office of the law firm. Stephen L. Odgers, one of the witnesses to be called by plaintiff, is an attorney in the Claremont office of the law firm. His testimony was to bear on the issue of liability; he had gone to the scene of the accident approximately one-half hour after it occurred and had taken pictures. Also, at that time, he had spoken to a man who lived near the scene who would be able to testify to the general condition of the roadway. The other witness' testimony, that of Herbert Hafif, was to bear on the issue of damages; he was to testify as to lost wages and to plaintiff's comparative ability to work before and after her injuries.

In opposition to the motion to disqualify, plaintiff argued that the jury need not be told that Ms. Moore is associated with the law firm. It was contemplated that the two attorney-witnesses would not participate in the trial before the jury and would restrict their participation to arguing points of law before the trial court in chambers. At one point Ms. Moore even offered to resign from employment at the law firm and to represent plaintiff as a sole practitioner.

In reaching its decision to issue the order already described, the trial court discounted all of these suggested mitigating procedures and stated that the principle of stare decisis, as mandated by *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937], required that it follow the rule of law set forth in *Comden* v. *Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971]. The California Supreme Court in *Comden* upheld a trial court order requiring a law firm representing plaintiff to withdraw from the case on the ground that rule 2-111(A)(4) of the Rules of Professional Conduct, *as it then existed*, required withdrawal when the attorney "knows or should know that he or a lawyer in his firm ought to be called as a witness on behalf of his client . . . ."[3] *Comden* required withdrawal of the

---

[3]Rule 2-111(A)(4), effective at the time of *Comden*, provided: "If upon or after undertaking employment, a member of the State Bar knows or should know that he or a lawyer in his firm ought to be called as a witness on behalf of his client in litigation concerning the subject matter of such employment he shall withdraw from the conduct of the trial and his firm may continue the representation and he or a lawyer in his firm may testify in the following circumstances:

"(a) If the testimony will relate solely to an uncontested matter; or

law firm in a circumstance where a nonwitness member of the firm would be the advocate. In the case before us, the order of disqualification was made on February 11, 1981. Since *Comden* was decided, rule 2-111(A)(4) of the Rules of Professional Conduct has been amended, effective November 1, 1979.

The amended rule, as promulgated by the Supreme Court and in effect at the time of the hearing, provides: "(4) If upon or after undertaking employment, a member of the State Bar knows or should know that the member ought to be called as a witness on behalf of the member's client in litigation concerning the subject matter of such employment, the member may continue employment only with the written consent of the client given after the client has been fully advised regarding the possible implications of such dual role as to the outcome of the client's cause and has had a reasonable opportunity to seek the advice of independent counsel on the matter. In civil proceedings, the written consent of the client shall be filed with the court not later than the commencement of trial. In criminal proceedings, the written consent need not be filed with the court but the member has the duty, before testifying, of satisfying the court that such consent has been obtained from the client if representing the defendant. The member may continue employment and the client's consent need not be obtained in the following circumstances:

"(a) If the member's testimony will relate solely to an uncontested matter; or

"(b) If the member's testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or

"(c) If the member's testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client; or

---

"(b) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or

"(c) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client; or

"(d) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

"(d) If the member is representing the People, if the member obtains the consent of the head of the particular office representing the People, and if the member's continued representation is not inconsistent with the principles of recusal."

It was stipulated by the parties and the trial court agreed that plaintiff's declaration, quoted above, was in compliance with the amended rule 2-111(A)(4) of the Rules of Professional Conduct. Nevertheless, the trial court made the order to disqualify, and at one point, invited the attorneys to seek a writ of mandate.[4]

The trial court, taking into consideration the rule's amendment stated: "While it is true that the Supreme Court may have used the former rule 2-111(A)(4) as a basis for its decision in *Comden*, that rule was not the sole basis for the decision. The Supreme Court also referred in its opinion to the ABA Code of Professional Responsibility, in particular EC 5-9. I assume that means Ethical Canons. And also to several decisions of Federal courts on this issue. The Supreme Court (at page 916, footnote four) also referred to its prior decision in *People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255 at 261, and in particular footnote four, wherein the court discussed the inherent powers of a trial court under CCP section 128 subsection (5) as to the conduct of its ministerial officers (i.e. attorneys as officers of the court).

"In its *Comden* decision, the Supreme Court discussed at length (at page 912) the problem of the appearance of attorney impropriety. The court stated as follows:

"'Significantly, the prohibition seeks to avoid the *appearance* of attorney impropriety. The language of rule 2-111(A)(4) closely parallels that of American Bar Association, Code of Professional Responsibility Disciplinary Rules, rules 5-101(B), (1) through (4) and 5-102(A) and (B). In disqualifying a law firm pursuant to American Bar Association rule 5-102(A) a federal court has cautioned we must be mindful of the possibility that testimony by a member of trial counsel's firm may lead

---

[4]The trial court stated before it made its ruling: "As a practical matter, and I am thinking in terms of the convenience of the jury, regardless of which way I rule on this matter, does either side then wish to have a stay in order to have the opportunity of seeking a writ to clarify this area of the law? Because if so, I would prefer not to have the jury come back at 1:30 and then be excused again. Because as a practical matter, they won't be coming back until next Tuesday and—... [¶] That will give either side an opportunity to seek a writ because I think it is a very important issue, one in which the law is not all that clear, and I think we need some appellate guidance both ways."

the public to be skeptical of lawyers as witnesses, thereby diminishing the public's respect and confidence toward the profession. "Where doubt may becloud the public's view of the ethics of the legal profession and thus impugn the integrity of the judicial process, it is the responsibility of the court to ensure that the standards of ethics remain high."' Citing as authority *U. S.* ex rel. *Sheldon El. Company* v. *Blackhawk Heating and Plumbing* (S.D.N.Y. 1976) 423 F.Supp. 486, 489."

The trial court then discussed *Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597 [168 Cal.Rptr. 196], a case decided after the amendment of rule 2-111(A)(4). The trial court concluded: "And so, therefore, I agree with the [holding] of . . . the *Chronometrics* case,[5] that one cannot say that the *Comden* case has been completely abrogated. In other words, I do not agree that *Comden* should be interpreted on the very, very narrow ground that it was based solely on the Rule of Professional Conduct that has since been replaced.

"Therefore, taking into consideration the evolution of the law as I understand it to be at this point, and also taking into consideration based on factors that have been discussed in previous cases, that what we are talking about in the matter at bench is a trial rather than merely a pretrial motion and we are talking about a jury trial rather than simply a court trial, and we are talking about two attorney witnesses rather than merely one, and furthermore, we are talking about a client who is an employee of the plaintiff law firm, such as was the case in *Greer*,[6] as

---

[5]*Chronometrics* did not involve the factual situation where an attorney is faced with the dual role of advocate and witness. In *Chronometrics*, the court upheld a trial court order requiring removal of an attorney because he breached the Rules of Professional Conduct by directly contacting the adversary and not the adversary's attorney. The court cited *Comden* mainly for the proposition that disqualification is proper when predicated upon a rule of professional conduct. In this case, the citation to *Chronometrics* by the trial court sheds no light upon the legal significance of the impact of the amendment of rule 2-111(A)(4) of the Rules of Professional Conduct on the *Comden* rule.

[6]This was in reference to *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164]. *Greer* at footnote 5, like *Chronometrics, supra,* did not involve the factual situation where an attorney is faced with the dual role of advocate and witness. The California Supreme Court held that it was within the trial court's discretion to recuse the entire office of the district attorney from prosecuting a murder case where the victim of the homicide was the son of a clerical employee of the part of the district attorney's office handling the prosecution. The basis for the decision was that the prosecutor suffered from a conflict of interest which might prejudice him against the defendants and undermine his impartial exercise of judgment. Furthermore, in its decision, the court considered the defendants' rights to a fair and impartial trial.

opposed to a client who is a member of the general public, and also taking into consideration the stare decisis force of the *Auto Equity* case, this court feels compelled to apply the holding of the *Comden* case and its progeny to the facts at bench and therefore rules that either the plaintiff's law firm will have to be disqualified from the representation of the plaintiff during the trial or in the alternative, the two attorney witnesses will be precluded from testifying, at least on direct examination as part of the plaintiff's case."[7]

Before us, plaintiff argues, because the rule of professional conduct upon which *Comden* rests has been changed, that the "*Comden* rule" has been impliedly repealed and is no longer the law of California, i.e., where the client knowingly consents to representation by an attorney who is also a witness, the trial court has no alternative but to permit plaintiff to have the counsel of her choice. Plaintiff argues, even if *Comden* is still good law, that withdrawal of the law firm is not warranted because rule 2-111(A)(4), as construed in *Comden*, allows for exceptions where "refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel . . ." (Rule 2-111(A)(4)(d).)

On the other hand, defendant argues[8] that the doctrine of stare decisis compels the application of the rules of *Comden* to the facts of this case. Otherwise, and independent from *Comden*, the trial court, defendant argues, has inherent power to govern the conduct of its ministerial officers and witnesses under Code of Civil Procedure section 128, subdi-

---

[7]Plaintiff pointed out that in *Chronometrics* the disqualified attorney was engaged in "dirty business," i.e, his act constituted a violation of the professional code.

Plaintiff here asked the trial court what "dirty business" the law firm was engaged in to warrant disqualification. In response, the trial court stated:

"Well, I am not sure that the current state of the law requires that the potential problem descend to the level of being 'dirty business.' I think all that is necessary, as I indicated, by the *Comden* case and the subsequent cases is that the court has the inherent authority to preclude an attorney witness either from handling the case during trial if he or she also intends to be a witness or to preclude that witness from testifying.

"In other words, I think that the client has to be given the choice of which alternative to take. But I think any time, particularly where there is a jury trial and where the issue of credibility may come up, that based on . . . the doctrine of preservation of judicial integrity and plus the purpose of the Code of Civil Procedure section 128, and in particular subsection five, that a trial court has not only the inherent power, but the duty to make sure that any proceedings are conducted in a manner in which there cannot be any criticism by any juror or any member of the general public with reference to the appearance of any impropriety."

[8]Prado Woods Corporation, one of the defendant construction companies, was the only defendant to answer plaintiff's petition for writ of mandate.

vision 5,[9] and that the exercise of this power supports a view that the order was proper.

In our view, this latter contention does not merit discussion because the rule under interpretation specifically covers the situation to the exclusion of any consideration of a statute of general application.

■ Because the issue here reaches us on a petition for writ of mandate, we can overturn the determination of the trial court only if that court acted in excess of its jurisdiction or if there is no rational basis in the record supporting the manner in which the court exercised the power and discretion vested in it. (*People* v. *Municipal Court* (*Byars*) (1978) 77 Cal.App.3d 294, 298 [143 Cal.Rptr. 491]; see *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 465 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].)

■ It is our opinion that the trial court abused its discretion as defined in the foregoing authorities by applying a literal application of *Comden* without balancing the equities involved and despite the change in the rule in effect when *Comden* was decided. Because it made no independent determination that there existed any real impropriety threatening the integrity of the proceeding before it, we must order the peremptory writ of mandate to issue.

## DISCUSSION

In *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, the court, in announcing its holding, stated: "When trial counsel foresees the possibility his continued representation of a client may fall within the prohibition of rule 2-111(A)(4) because he or a member of his firm ought to testify on behalf of such client at trial, he should resolve any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel. (See ABA Code of Prof. Responsibility, EC 5-10.) Failing voluntary withdrawal by trial counsel in such situation a trial court is vested with broad discretion to order

---

[9]Code of Civil Procedure section 128, subdivision 5 provides:
"Every court shall have power:
" . . . . . . . . . . . . . . . .
"5. To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto; . . ."

withdrawal. The court in the instant case acted well within the discretion vested in it by rule 2-111(A)(4) in its present form. [Fn. omitted.]" (*Id.*, at pp. 915-916.)

The *Comden* court predicated the firm's removal upon the ethical considerations and purposes underlying former rule 2-111(A)(4). It stated: " . . . ultimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. 'The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount . . . . [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our judicial process.' [Citing *Hull* v. *Celanese Corporation*, (2d Cir. 1975) 513 F.2d 568, 572.] [Fn. omitted.]" (*Id.*, at p. 915.)

Thus, the rationale underlying former rule 2-111(A)(4) was one of professional propriety or etiquette resulting from the balancing of a number of competing interests. (See *People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180, 201 [150 Cal.Rptr. 156].)

The commonly accepted concepts implicit in former rule 2-111(A)(4) were fully recited in *People* ex rel. *Younger* v. *Superior Court, supra,* 86 Cal.App.3d 180: "Four commonly accepted bases for the rule are . . .: (1) because of interest or the appearance of interest in the outcome of the trial, the advocate who testifies at trial may be subject to impeachment and the evidentiary effect of his testimony will be weakened; (2) opposing counsel may be handicapped in cross-examining and in arguing the credibility of trial counsel who also acts as a witness for his client; (3) an advocate who becomes a witness may be in the unseemly position of arguing his own credibility, which may, in itself or in combination with the jurors' tying his persuasiveness as an advocate to his credibility as a witness, make him a less effective advocate; [fn. omitted] (4) the role of advocate and witness are entirely inconsistent and should not be assumed by one individual. . . . A fifth generally accepted basis for the rule, said by Professor Wigmore to be 'the most potent and most common reason judicially advanced' (6 Wigmore, Evidence, *supra*, § 1911, pp. 775-776), . . . is the appearance of impropriety: ' . . . not that lawyers as witnesses may distort the truth in favor of the client, but that the public will *think* they may, and that the public's respect for the profession and confidence in it will be effectively diminished.' (6 Wigmore, Evidence, *supra*, § 1911, pp. 775-776; see also, e.g., *Comden*

v. *Superior Court, supra*, 20 Cal.3d at p. 912.) . . . [¶] [The] reasons for disqualification of a law partner are advanced by Professor Sutton: 'A lawyer testifying for a party represented by his law partner is also subject to impeachment for bias. The appearance of interest and bias possibly is less when the legal fee will not be shared by the testifying partner. Nevertheless, the relationship of partners is inescapably close, so close that the appearance of bias persists. Too, the advocate must argue the credibility of his partner's testimony, and the situation is calculated to evoke lay criticism of the zealousness of lawyers and law firms. The same policy considerations are at work; it is only a matter of degree. . . .' (Sutton, *supra*, 41 Texas L.Rev. at p. 492 [fns. omitted]; [citation].) [¶] It appears, therefore, that the reasons for the basic rule most emphasized when the trial attorney is a member of the same law firm as the attorney-witness are those based on the common interest of the attorney-witness with his law firm in the outcome of the litigation and the appearance of impropriety. (See *Comden* v. *Superior Court, supra*, 20 Cal.3d at p. 912.)" (*People* ex rel. *Younger* v. *Superior Court, supra*, 86 Cal.App.3d 180, 197-199.)

On the other hand, the client has an interest in competent representation by an attorney of his or her choice. (See *Comden* v. *Superior Court, supra*, 20 Cal.3d 906, 915 [majority opn.], 917 [dis. opn.]; *People* ex rel. *Younger* v. *Superior Court, supra*, 86 Cal.App.3d 180, 201, and perhaps, the interest in avoiding inconvenience and duplicative expense in replacing counsel already thoroughly familiar with the case. (See *People* ex rel. *Younger* v. *Superior Court, supra*, 86 Cal.App.3d 180, 201; see, e.g., *Comden* v. *Superior Court, supra*, 20 Cal.3d 906, 914-915.) Another interest deserving consideration is the interest of the affected attorney or law firm in continuing to represent the client. (See *Comden* v. *Superior Court, supra*, 20 Cal.3d 906, 919 [dis. opn].)

In our view, the parties advance arguments which are too facile and rigid to support a satisfactory resolution. Plaintiffs argue that rule 2-111(A)(4) of the Rules of Professional Conduct, as amended, obliterates any discretion which a trial court may have to order withdrawal of counsel where the client consents to counsel assuming the dual role of witness and of advocate. On the other side, defendant argues, where the client's attorney or a member of the attorney's law firm ought to be called as a witness on behalf of the client that *Comden* mandates that the trial court order withdrawal, even though the rule upon which *Comden* rests has been amended.

It is our opinion that the trial court under the new rule still has discretion to order withdrawal of counsel in instances where an attorney or a member of the attorney's law firm ought to testify on behalf of his client. The amended rule, however, changes the emphasis which the trial court must place upon the competing interests in reaching its decision. Under the amended rule 2-111(A)(4) of the Rules of Professional Conduct, the trial court, when balancing the several competing interests, should resolve the close case in favor of the client's right to representation by an attorney of his or her choice and not as in *Comden*, in favor of complete withdrawal of the attorney.[10] Under the present rule, if a party is willing to accept less effective counsel because of the attorney's testifying, neither his opponent nor the trial court should be able to deny this choice to the party without a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process. (See *Comden v. Superior Court, supra,* 20 Cal.3d 906, 918 [dis. opn.]; *Harris* v. *Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750].) In other words, under the present rule the trial court can disqualify counsel only where it is confronted with manifest interests which it must protect from palpable prejudice. (See *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, 919 [dis. opn.]; *People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255.)

After reading the record, it is clear to us that the trial court felt compelled to follow by rote the holding of *Comden* without weighing the conflicting interests involved. Nowhere in the record does the trial court recognize the substantial hardship which would befall plaintiff if substitute counsel were required. Plaintiff's declaration disclosed that she had had reasonable opportunity to seek the advice of independent counsel, that she was aware of the possible problems of the dual role of her attorneys, and that she would suffer financial hardship otherwise because the law firm was not charging her a fee. Furthermore, the trial court was informed at the hearing, because plaintiff had been a long-term employee of the law firm, that she had developed the utmost trust and confidence in the law firm's abilities to represent her. We also note, although *Comden* recognized under former rule 2-111(A)(4)(d) an attorney's continued representation should be allowed if his "coerced withdrawal would create substantial hardship for [his client] because of the distinctive value of [his] service" (*Comden* v. *Superior Court, supra,*

---

[10]See *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391]; *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65] (trial court could not remove attorney over the objection of defendant in the criminal context).

20 Cal.3d 906, 914), that the trial court here failed to address the possible application of this exception. It has been held, where an attorney "either will or should be called as a witness" to testify on behalf of his clients, that the trial court abused its discretion in disqualifying the attorney where his clients stated that they "could not have equal confidence in any other lawyer" and that they would suffer financial hardship. (*Harris* v. *Superior Court*, 97 Cal.App.3d 488, 491-492.)

Otherwise, the trial court as a basis for its order failed to point to any clear evidence of detriment, either to the opponents or to the integrity of the judicial process. In fact, plaintiff attempted to ameliorate any possible appearances of impropriety. The attorney-witnesses undertook not to participate in the trial as advocates before the jury. Ms. Moore, offered to disassociate herself from the law firm in order that the jury would not know of the connection between the witness-attorneys and herself, as advocate. Because there were no legal fees involved, the appearance of interest and bias on the part of the testifying attorneys would be minimal. Even so, it is doubtful that the jury would find it improper or unusual for an employer to testify on behalf of his employee. We agree with plaintiff that the trial court in explaining its reasons for its ruling, "merely recited abstract principles of judicial discretion and equally abstract comments about the effect of civil lawsuits where attorneys are witnesses upon the community."

### DISPOSITION

Accordingly, let a peremptory writ of mandate issue to the Superior Court of San Bernardino County in No. CW 12338 directing it to vacate its order of February 11, 1981, disqualifying plaintiff's law firm. The alternative writ of mandate is discharged.

Kaufman, Acting P. J., and Morris, J., concurred.